OCTOBER AND NOVEMBER TERM, 1884, No. 90.    OCTOBER 29, 1884.

## Blackmore's Appeal.

A, against whom a petition in bankruptcy had been filed, made a composition with his creditors, the amount of which was secured by a mortgage upon his wife's separate real estate, executed by her and himself to B and C, who were selected as trustees. Upon default, the mortgage was foreclosed, the mortgaged premises were purchased at the sheriff's sale by B and C, in their individual names, for less than one tenth of the mortgage principal, and a deed acknowledged to them by the sheriff. They took possession, obtained from the bankruptcy creditors releases and agreements that B and C should retain for themselves the title to the premises, collected rents, and five years after sold the same for a sum considerably in excess of the mortgage principal.

*Held* on demurrer to bill filed by A and wife against B and C that the parties sustained the relation of debtor and creditor; that no such relation of trust existed between her and the mortgagees as to preclude the latter from buying at the sheriff's sale; and that that sale divested all her estate in the land.

Before MERCUR, C. J. ; GORDON, PAXSON, TRUNKEY, STERRETT, GREEN, and CLARK, JJ.

Appeal of Thomas J. Blackmore and Margaret S. Blackmore, his wife, in right of said Margaret S. Blackmore, from a decree of the Court of Common Pleas, No. 2, of *Allegheny County.*

Bill in equity between the above-named parties, complainants, and William H. Smith, William H. Everson, George T. Robinson, William Rea, and Reade W. Bailey, defendants.

Complainants' bill, filed July 17, 1883, set forth that Margaret S. Blackmore owned two adjacent lots of land, situate on Carson street, in the city of Pittsburgh ; that a petition in bankruptcy was filed against her husband, Thomas J. Blackmore ; that said Thomas J. Blackmore

offered a composition to his creditors, the amount of the composition to be secured by a mortgage on his said wife's said property; that the composition was accepted; that William H. Smith and William H. Everson were selected trustees; that a mortgage was made by said Margaret S. Blackmore and her said husband to said trustees, dated December 1, 1874, in the sum of $25,000, the amount of the composition; that said mortgage was afterwards foreclosed by said trustees, who, at the sheriff's sale, bought in said property, in their own individual names, not being mentioned as trustees, for $2,005, the sheriff's deed to them being acknowledged February 16, 1876; that said William H. Smith and William H. Everson took possession of said lots, rented them, and during the time they held said lots, received in rents about $14,375, and then, March 19, 1881, sold said land to said George T. Robinson, William Rea, and Reade W. Bailey for $36,000, all of which moneys said trustees applied to their own use, and did not pay to said composition creditors in bankruptcy, and did not pay the residue which would have remained after payment of said creditors to Mrs. Blackmore; that almost all the bankruptcy creditors agreed that said Smith and Everson should retain for themselves the title to said real estate, and signed releases for any claim they might have against them as trustees; that it did not come to the knowledge of the orators that said Smith and Everson claimed to own said real estate as their own, or to hold the same in any other way than as trustees under said composition, until about October, 1878; that the orators charge that said Smith and Everson were trustees for said Margaret S. Blackmore of the residuary fund coming into their hands out of her estate, left after satisfying the claims of her husband's creditors in bankruptcy and charges of administering the trust; that George T. Robinson, William Rea, and Reade W. Bailey, who purchased said real estate from Smith and Everson, had notice upon record in said bankruptcy proceedings, and record of the mortgage, as well as actual notice, as the orators were informed, believed, and expected to be able to prove, of a trust existing for the use and benefit of said Margaret S. Blackmore, and are liable to account for the proper application of the purchase-money of said real estate to her.

The prayers of the bill were, first, that Smith and Everson be decreed to be trustees of said Margaret S. Blackmore, and required to account to her and to pay over all moneys realized out of her said real estate, less charges of the trust; and second, that said William Rea, George

T. Robinson, and Reade W. Bailey be decreed to be liable to said Margaret S. Blackmore for the faithful application of the purchase-money paid by them to said Smith and Everson, and required to pay the same to said Margaret S. Blackmore in the event of any default upon part of said Smith and Everson so to do.

The defendants demurred to the bill, assigning for causes of demurrer the following:

"*First.* That the said plaintiffs have not in their bill set forth any such matters and things as entitle them, or either of them, to any decree against said defendants, or any of them.

"*Second.* That said William H. Smith and William H. Everson are not, under or by virtue of anything in said bill alleged or contained, shown to have been trustees for said Margaret S. Blackmore.

"*Third.* That said defendants are not, nor are any of them, in any manner accountable to said Margaret S. Blackmore by reason of anything in said bill alleged or contained.

"*Fourth.* That the judgment on the *scire facias*, issued upon the mortgage mentioned in said bill, against said Thomas J. Blackmore and Margaret S. Blackmore, is conclusive upon them and each of them; and that by and under the sheriff's sale had upon the *levari facias* issued upon said judgment, all the title of said plaintiffs in said mortgaged premises was divested, and said title by said sale fully vested in the said purchasers clearly discharged and freed from all equity and benefit of redemption of said plaintiffs."

The Court sustained the demurrer and dismissed the bill in the following opinion and decree:

"By the proceedings in bankruptcy ending in the composition, the old debts of Thomas J. Blackmore were cancelled, and new debts to the amount of the percentage were created. To secure these new debts, a mortgage was given by Blackmore and wife to Smith and Everson, as trustees, for the creditors. The statement in the bill indicates that these trustees were selected in accordance with the usual practice, by the creditors, with the approval of the court. The form of the mortgage is not set out, but it is conceded to have been the ordinary form of mortgage.

'The debtor being in default, the trustees issued a *scire facias* on the mortgage and prosecuted the same to judgment, issued execution, and had the property sold by the

sheriff. The trustees became the purchasers. The sheriff's deed to them was acknowledged 13th of July, 1876.

"The bill contains no allegation or suggestion of any fraud, trick, concealment, or device on the part of the defendants in the proceedings relating to the judgment or sale. It is not alleged that the sale was for a price below the then value of the property over and above expenses. It is asserted that almost all of the creditors have agreed that these trustees should hold the property, and have signed releases—but it is not suggested that these releases were in favor of either the plaintiff or her husband.

"The fundamental proposition of the plaintiff is based on the assumption that, as a matter of law, the defendants were her trustees both before and after the sheriff's sale, regardless of any question of good faith, and regardless of the legal adjudication of the rights of the parties and of the sale under the mortgage.

"The mortgage contained no power of sale. The trustees were mere legal holders of the mortgage for the benefit of the creditors, whose debts were fixed and settled. The mortgage belonged to the creditors. Had there been but a few creditors, or but one creditor, there would have been no need of a trustee. The mortgage put the trustees in a very different position from that of an assignee for the benefit of creditors or of a trustee under a conveyance with power to sell in case of a default without any judicial proceeding.

"The case of Ventres v. Cobb, 105 Ill., 36, relied on by plaintiff's counsel, is not in point. There the trust deed contained a power to sell, and that power had been exercised in bad faith and in an illegal manner.

"Our act of Assembly providing for a *scire facias* on a mortgage gives the mortgagee a right to set up any defense whatever that he or she may have to the payment of the mortgage.

"The judgment on the *scire facias* is a conclusive adjudication as to the amount of the debt, and that, unless it is paid, the land described in the mortgage shall be sold to satisfy the debt. It concludes effectually the mortgagor. At the sale the creditor may purchase—he is not the vendor in the judicial sale: Hartman v. Ogborn, 4 P. F. Smith, 120 ; Butterfield's Appeal, 27 P. F. Smith, 197 ; the Market Bank v. Daums, C. P. No. 2, (not reported,) 387 Oct. T., 1879.

"Had the mortgage been given to a single creditor, no one doubts that he would have purchased and taken an absolute title to the property.

[Blackmore's Appeal.]

" No doubt the trustees purchasing took the indefeasible estate acquired at sheriff's sale in trust for the creditors who had owned the mortgage.   The creditors might have elected to hold the property for an advance, or they could have directed any other disposition of it, or possibly they might have elected to hold the trustees personally for the amount of their bid at the sheriff's sale.   If the trustees procured releases of the property to themselves from the creditors, they were bound to the utmost good faith in making known the situation to the creditors, but that is not the business of the plaintiffs.

"I am unable to see that, before or after the sale, the trustees were trustees for Mrs. Blackmore any more than is any ordinary mortgagee for the mortgagor.   Certainly after the judgment and sale on the *scire facias*, no confidential relations existed, nor did any obligations towards Mrs. Blackmore rest on the defendants.   For these reasons the demurrer must be sustained.

"And now, 19 January, 1884, after argument, and upon consideration, the demurrer of defendants is sustained and the bill is dismissed at the cost of complainant."

The complainants thereupon took this appeal, assigning for error the entry of the above decree.

*Morton Hunter* and *J. S. Ferguson*, for appellants, cited : Ventres *v.* Cobb, 105 Ills.. 36 ; Meacham *v.* Steele, 93 Ill., 135.

*Malcolm Hay* and *Kennedy & Doty* for appellees.

The act of Assembly regulating proceedings upon mortgage by *scire facias* gives the mortgagee the same right of purchase as a stranger : Blythe *v.* Richards, 10 S. & R., 261 ; Pierce *v.* Potter, 7 Watts, 475 ; Clarke *v.* Stanley, 10 Barr, 472 ; Blocher *v.* Blocher, 1 Pitts., 92.

The judgment is conclusive : Hartman *v.* Ogborn, 54 Pa. St., 120 ; Butterfield's Appeal, 77 Pa. St., 197.

NOVEMBER 10TH, 1884.—PER CURIAM : No such relation of trust existed between Mrs. Blackmore and the appellees as to preclude them from buying at the sheriff's sale made on the judgment obtained on the mortgage. She and the mortgagees sustained the relation of debtor and creditors.   If she, without any fraud on their part, permitted the property to be sold for less than its value and the mortgagees to purchase the same, she cannot successfully claim that thereafter they held it in trust for her.   The public judicial sale divested all her estate in

[Courtney *v.* Keller *et al.*]

the land. It follows that she now has no rights, resulting from a subsequent sale of the property to enforce in equity.

Decree affirmed and appeal dismissed at the costs of the appellants.